### Henry A. Truitt, Appellant, v. Mabel Truitt, Appellee.

### Gen. No. 5253.

DIVORCE—*when condonation of adultery not established.* To establish condonation by the husband of adulterous conduct by the wife a reconciliation followed by cohabitation must be shown.

Divorce. Appeal from the Circuit Court of La Salle county; the Hon. R. M. SKINNER, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed March 11, 1910.

EDWARD MYERS and McDOUGALL & CHAPMAN, for appellant.

WILLIAM ROE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Henry A. Truitt filed a bill against his wife, Mabel Truitt, charging her with adultery with William H. Parrish and praying for a divorce and the custody of their minor children. The defendant answered the bill by denying the charges against her and filed a cross-bill praying for a divorce from her husband on the ground of extreme and repeated cruelty. The defendant to the cross-bill answered it, denying the allegations made against him. The case was tried by the court without a jury. The court found that previous to the filing of the bill the defendant in the

original bill had committed adultery as charged in the bill, but that the offense had been condoned by the husband; the court also found that there was no evidence to sustain any of the allegations of the cross-bill. A decree was entered dismissing both bills for want of equity and ordering that Henry A. Truitt pay Mabel Truitt the sum of thirty-five dollars for her reasonable solicitor's fees. Henry A. Truitt appeals from that portion of the decree which finds that he had condoned the adultery of the wife and dismisses the original bill.

Neither party has appealed from that part of the decree finding the appellee guilty of adultery, although counsel for appellee insists in his argument that the charge was not proved. The evidence shows that the parties were married at Toluca in January, 1899, and have two children, a girl aged six years and a boy of the age of four years; that in 1908, and until February 27, 1909, they lived in Streator where appellant was employed as a laborer in a tile factory; that prior to February 27, 1909, Parrish had been a boarder with the family for several months. On February 27, 1909, while appellant was at work, appellee left their home, leaving a note in the house for the husband stating she had gone to her folks in California and would not return, but in fact she took the children and went to Kankakee and there obtained a room and board under the name of Mabel Hamilton which she had assumed. Parrish knew she had gone to Kankakee, visited her there, furnished her with money and carried on a correspondence with her, but told appellant that appellee had gone to California. About two weeks after the desertion trouble arose between appellant and Parrish; appellant caused the arrest of Parrish and on a trial before a justice, Parrish told that appellee with the children was at Kankakee. The satchel of Parrish was searched and in it were found several letters written to him by appellee under her assumed name. The appellant then went to Kankakee

and with the aid of an officer secured his children and took them back to Streator. Appellee also returned to Streator and the parties met in an attorney's office where an agreement was made under which they were to live together again, and as a pledge that she would be true to her marriage vows the appellee agreed to give the custody of the children to appellant in case she should again be unfaithful. The evening the agreement was made she said to appellant that there was nothing in the agreement to prevent her going to her folks in California. The letters written by appellee to Parrish found in his satchel are very ardent and contain such expressions as "Dear Will." "Oh dearest of all lovers, I hope you are. I hope we can be near each other soon." "To my precious lover from your loving girl, Mabel," etc., etc. Several days after her return even more ardent and gushing letters from Parrish to her were found in her trunk by appellant. There is clear proof of the adulterous relations of appellee with Parrish in their correspondence and actions, although appellee while a witness in her own behalf denied that she was guilty of the offense charged against her, but made no reasonable explanation of the letters she had written to Parrish.

The defense of condonation is also urged as a reason why a divorce should not be granted because of her misconduct. After her return she stayed at the house of appellant about a week. Appellant testifies they did not live together as man and wife and that they never occupied the same room after he heard of her adultery with Parrish; that he occupied a bed with one of the children and that she occupied another bed with the other child. She testifies that after her return they occupied separate beds part of the time but that they occupied the same bed part of the time. After about a week, she again left appellant leaving the children with him, and telling him that she loved Parrish and could not help it. Parrish at this time was in jail, so that she could not go to him, but went

to her relatives. There is nothing in the record to cast any doubt on the truthfulness of appellant's testimony, while she is thoroughly discredited and convicted of perjury. Condonation depends upon proof of the resumption of marital cohabitation. Her veracity being so clearly impeached the testimony of appellant should be believed as against her discredited testimony. Condonation is the forgiveness of misconduct constituting a cause for divorce upon the condition that the offender will not in future be guilty of such misconduct. 9 Am. & Eng. Encyc. of Law, 822 (2nd Ed.). "Forgiveness which is to take away the husband's right to a divorce must not fall short of reconciliation, and that this must be shown by the reinstatement of the wife in her former position, which renders proof of conjugal cohabitation, or the restitution of conjugal rights, necessary." Keats v. Keats, 1 Sw. & Tr. 334. A return to cohabitation induced by false assurances will not constitute condonation where the innocent party leaves on discovery of the fraud. Farnham v. Farnham, 73 Ill. 497. It clearly appears from the evidence that she never repented of her misconduct. Her statement when she left the last time that she loved Parrish and could not help it, with the letters from Parrish to her found in her possession, and the testimony of appellant that they did not resume the marital relations, all show that there was no condonation. The decree will be reversed and the cause remanded with instructions to the trial court to enter a decree of divorce in favor of appellant upon the ground of adultery, without any allowance of expense money to appellee, and giving the custody of the children to appellant with suitable provision for appellee to see them.

*Reversed and remanded with directions.*